IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 5:04-CR-30029 | |
| | ) | | |
| v. | ) | | |
| STEPHEN ELHANON WELLS, | ) | By: | Hon. Michael F. Urbanski |
| Defendant | ) | | Chief United States District Judge |

## MEMORANDUM OPINION

On March 16, 2021, Stephen Elhanon Wells, represented by the Federal Public Defender, filed a "Motion for Compassionate Release" seeking reduction of his sentence of 480 months to 240 months or time served. Def.'s Mot., ECF No. 76. Wells relies on United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). The government filed a response in opposition to Wells's motion on April 5, 2021, ECF No. 80, and Wells replied. ECF No. 81. As discussed below, the court **GRANTS in part** Wells's motion for compassionate release and reduces his sentence to a total of 324 months.

## I.  BACKGROUND

On May 19, 2004, Wells was charged in an eight-count superseding indictment with drug distribution and firearms offenses. ECF No. 20. The superseding indictment alleged that at various times starting in fall 2002 and continuing through summer 2003, Wells possessed with the intent to distribute a mixture containing a detectable amount of methamphetamine, also known as "crank." He also was charged with possessing with the intent to distribute marijuana and cocaine, as well as with using or carrying a firearm during and in relation to the drug trafficking crimes. Id.

1

Pursuant to a plea agreement, Wells pled guilty to one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine, marijuana, and cocaine in violation of 21 U.S.C. § 846 (Count One); one count of possession of 500 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Three); and two counts of possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts Four and Six). Plea Agreement, ECF No. 44, at 1–3.

During an April 27, 2003 traffic stop for failure to wear a seatbelt on the Blue Ridge Parkway, Wells lied about his identity to a park ranger. Rather than giving the name Stephen Elhanon Wells, he identified himself as Michael Wayne York and provided a false birth date and social security number. Presentence Investigation Report (PSR), ECF No. 72, ¶ 7. A search of the vehicle led to the discovery of four ounces of marijuana and a loaded 9mm handgun. Id. Appearing two days later in this court on charges of possession of marijuana and a handgun on the Blue Ridge Parkway, Wells again falsely identified himself as Michael Wayne York, even signing court documents setting out conditions of probation as Michael Wayne York. Id., ¶ 8. This traffic stop was the basis of Count Five (use or carry of a firearm during and in relation to distribution of marijuana) and Count Eight (possession of a firearm while being an unlawful user of or addicted to a controlled substance) of the Superseding Indictment, both of which were dismissed as part of the Plea Agreement. Superseding Indictment, ECF No. 20 at 4-6.

According to the PSR, the probation officer determined that Wells was responsible for the distribution of 956.5 grams of methamphetamine, 22.1 grams of cocaine, and 18.6

2

grams of marijuana. PSR, ECF No. 20, ¶ 10. Under the 2003 version of § 2d1.1 Application Note 10 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), the combined marijuana equivalencies of these drugs equaled 1,912 kilograms of marijuana. Id., ¶ 15. Accordingly, Wells's base offense level was 32. Id. Wells's acceptance of responsibility led to a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a)–(b). Id., ¶ 21. However, because Wells lied about his identity multiple times during the related proceedings in 2003, he received a two-level increase for willfully obstructing justice pursuant to U.S.S.G. § 3C.1.1. Id., ¶ 19. Thus, his total offense level was 31. Id., ¶ 24. Due to a 1989 second-degree burglary conviction in Kentucky state court, Wells was assigned three criminal history points resulting in a criminal history category of II. Id., ¶¶ 27-30.

On the drug counts (Counts One and Three), Wells faced a statutory mandatory minimum sentence of 10 years and a maximum sentence of life. Id., ¶ 42 (citing 21 U.S.C. § 841(b)(1)(A)). On the first firearm conviction (Count Four), he faced a mandatory consecutive minimum sentence of 5 years and a maximum sentence of life. Id. (citing 18 U.S.C. § 924(c)(1)). On the second firearm conviction (Count Six), he faced a mandatory consecutive minimum sentence of 25 years and a maximum of life. Id. (citing 18 U.S.C. § 924(c)(1)).[1] Altogether, Wells faced a statutory mandatory minimum sentence of 40 years.

Based on Wells's offense level of 31 and criminal history category of II, his Guidelines range of imprisonment on the drug offenses was 121 to 151 months. Id., ¶ 43. The Guidelines sentences for the § 924(c) charges were 60 months and 300 months, all to run consecutively with the sentences for the drug distribution charges. Id.

---

[1] Prior to November 13, 1998, a second violation of 18 U.S.C. § 924(c)(1) carried a mandatory minimum penalty of 20 years. See United States v. Redd, 444 F.Supp.3d 717, 720 n.3 (E.D. Va. 2020) (citing Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469).

3

On April 13, 2005, Wells was sentenced to 481 months, reflecting a sentence of 121 months each on Counts One and Three, to run concurrently with each other; 60 months on Count Four, and 300 months on Count Six, to run consecutively to all other counts. He also was sentenced to a 5-year term of supervised release. J., ECF No. 56 at 1-3. The court noted that the sentence was "statute driven." Minutes, ECF No. 55.

On June 23, 2015, the court reduced Wells's sentence by 1 month to 480 months, based on Amendment 782 of the Guidelines and its retroactive application to criminal defendants who were sentenced before November 1, 2014 for drug offenses. ECF Nos. 62, 63. Under Amendment 782, Wells's recalculated total offense level was 29, resulting in a recalculated Guidelines range of 120–21 months for the drug charges.[2] Adding the new minimum Guidelines sentence of 120 months to the 360-month sentence on the firearms sentence resulted in the 480-month sentence. ECF Nos. 62, 63. Wells has been in custody since March 29, 2004, and is scheduled to be released on February 14, 2038. Resp. in Opp'n, ECF No. 80, at 3.

Wells seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) and an accompanying reduction of his second § 924(c) sentence to time served. Wells argues that "the severe disparity between the sentence he received and the sentence he would get today, combined with his demonstrated rehabilitation while incarcerated, constitute an extraordinary and compelling circumstance" enabling this court to reduce his sentence.

---

[2] Amendment 782 of the Guidelines reduced Wells's offense level to 29. His offense level coupled with his criminal history category of II resulted in a Guidelines sentence of 97-121 months. However, because his convictions carried a statutory mandatory minimum sentence of ten years, his new guidelines range was 120-121 months.

4

Def.'s Mot., ECF No. 76, at 1–2. The government opposes any sentence reduction. Resp. in Opp'n, ECF No. 80, at 2.

## II. ANALYSIS

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Therefore, Wells's requested relief requires the court to consider: (1) if he exhausted his administrative remedies; (2) if so, whether there are "extraordinary and compelling reasons" that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

A. <u>Wells has fully exhausted his administrative remedies.</u>

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to bring motions under § 3582(c) was added by the First Step Act to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before bringing a motion in the district court, a petitioner must first exhaust his administrative

5

remedies. See 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" Id.; see McCoy, 981 F.3d at 283.

Here, Wells requested compassionate release from the BOP on January 28, 2021. Def.'s Mot., ECF No. 76-5, at 1. The warden denied Wells's request on February 3, 2021. See Def.'s Mot., ECF No. 76-6, at 1. Wells filed his compassionate release motion with the court on March 16, 2021. See Def.'s Mot., ECF No. 76. Wells thus satisfied the administrative exhaustion requirement under the second path provided by § 3582(c)(1)(A). See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.") In addition, the requirement that a petitioner complete certain steps before filing his motion is a claim-processing rule, rather than jurisdictional. Id. As such, it can be waived or forfeited. Id. at 130. The government does not contest that Wells has exhausted his administrative remedies. Accordingly, the court finds that Wells has satisfied the statute's exhaustion requirements.

B. Wells presents extraordinary and compelling reasons to warrant a sentence reduction.

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Wells's case. 18 U.S.C. § 3582(c)(1)(A). In McCoy, 981 F.3d at 284, the Fourth Circuit held that district

6

courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." McCoy, 981 F.3d at 284 (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so finding, the court rejected the notion that district courts are constrained by the policy statement found in U.S.S.G. § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

The McCoy court also found that the First Step Act made a "monumental change" to sentencing calculations under 18 U.S.C. § 924(c). Id. at 275 (citing Brooker, 976 F.3d at 230). Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. Redd, 444 F. Supp. 3d at 720.

7

In <u>McCoy</u>, which consolidated four cases from lower district courts, each defendant had received a decades-long sentence, largely driven by his "stacked" § 924(c) convictions. The defendant in <u>McCoy</u> received a "mandatory 35 year sentence . . . driven almost entirely by a 32 year minimum sentence under § 924(c)." <u>McCoy</u>, 981 F.3d at 285 (citing <u>McCoy v. United States</u>, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020)). Likewise, the defendants in <u>United States v. Bryant</u> "each received a 45 year mandatory minimum sentence under § 924(c), including two consecutive 20 year sentences for 'second and subsequent' convictions." <u>McCoy</u>, 981 F.3d at 285; <u>see</u> <u>United States v. Bryant</u>, 2020 WL 2085471, at *1 (D. Md. Apr. 30, 2020).

The <u>McCoy</u> court acknowledged that the change to § 924(c) does not apply retroactively to sentences imposed before December 21, 2018. <u>Id.</u> at 275. But the court distilled two features of stacked § 924(c) sentences that led to finding that the defendants met the "extraordinary and compelling reasons" standard: (1) "the sheer and unusual length of the sentences," and (2) the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." <u>Id.</u> at 285. The court concluded that the district courts' consideration of "the First Step Act's declaration of the appropriate level of punishment under § 924(c)" to be proper "in assessing the defendants' cases, on an individualized basis, for compassionate release." <u>Id.</u> at 275. Thus, under <u>McCoy</u>, the district court must conduct an "individualized assessment" of the defendant's circumstances when considering whether a defendant's stacked § 924(c) sentences constitute an "extraordinary and compelling reason" warranting a sentence reduction. <u>Id.</u> at 286.

8

Wells argues that the disparity between the stacked § 924(c) sentence he received and the one he would receive for the same offense today is an "extraordinary and compelling reason" for his release. Def.'s Mot., ECF No. 76. Wells's sentence is comprised of 10 years on the drug convictions, 5 years on the first §924(c) conviction and 25 years on the second § 924(c) conviction. Under the current statutory scheme, because Wells had not yet been convicted of the first violation prior to committing the second violation, the mandatory minimum sentence for both § 924(c) charges would be 5 years. See 18 U.S.C. § 924(c)(1)(A)(i). Under U.S.S.G. § 2K2.4(b), Wells's Guidelines sentence would be the minimum term of imprisonment required by statute, or 5 years on each count. Thus, if Wells were sentenced today, he likely would be sentenced to 20 years, rather than the 40 years he is currently serving, reflecting the substantial change in "what Congress has now deemed an adequate punishment for comparable § 924(c) conduct." McCoy, 981 F.3d at 285 (quoting Redd, 444 F. Supp. 3d at 723). The court finds the "gross disparity" in sentencing between the sentence Wells received in 2005 and the sentence he would likely receive today for the same conduct to be an "extraordinary and compelling reason" for relief under § 3582(c)(1)(A). McCoy, 981 F.3d 285–86; see also United States v. Brown, Nos. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 21, 2021) (determining that the "gross disparity" between defendant's sentence of 120 months and a modern sentencing range of 37–46 months for the same conduct was an "extraordinary and compelling" reason warranting sentence reduction).

Citing Wells's plea agreement, the government argues that Wells's sentence is not an extraordinary and compelling circumstance warranting compassionate release. Resp. in

Opp'n, ECF No. 80, at 11. The government points out that "Wells was only convicted of two counts of § 924(c) rather than the four that had been charged." Id. at 11. The government contends that "[i]f the plea agreement were to be negotiated today," or "[i]f his case were to have been charged today," the outcome would have been different. Id. The basis for the argument is the government's assertion that if Wells had been charged and convicted on the four firearm counts, under current sentencing standards he would have been subject to a minimum sentence of 360 months based on all the charges in the superseding indictment. Id. at 12.[3]

But the government's hypothetical new plea agreement is unpersuasive, as "this court has repeatedly rejected attempts by the government to argue it would have chosen a different prosecutorial strategy had different law governed at the time." United States v. Steppe, 3:16-cr-22, Dkt. 328, at 5 (W.D. Va. Apr. 20, 2021); see United States v. Smith, 379 F. Supp. 3d 543, 548 (W.D. Va. 2019) ("The retroactive assumption suggested by the government simply is too speculative a basis on which to determine [a defendant's] eligibility for a sentence reduction."). "[S]uch a speculative claim is insufficient" as one could engage in many hypotheticals about what "might have been different at the time" Wells was charged. United States v. Stanback, 377 F. Supp. 3d 618, 624 (W.D. Va. 2019).

The government also argues in support of its hypothetical new plea agreement or absence thereof that a holding from Bousley v. United States, 523 U.S. 614 (1998) applies here. Resp. in Opp'n, ECF No. 80, at 11–12. Bousley raised an "actual innocence" claim in a motion for habeas corpus relief under 28 U.S.C. § 2255, claiming that he unintelligently pled

---

[3] Notably, under the government's calculation, Wells's sentence would be ten years less than his current sentence of 480 months.

10

guilty to a § 924(c)(1) charge in his indictment and that, under intervening Court precedent, the government had misinformed him of the elements of his charge. Bousley, 523 U.S. at 617–18. But because the petitioner procedurally defaulted the claim by failing to raise it during an appeal of his sentence, he could only raise the claim in habeas if he could demonstrate either "cause and actual prejudice, or that he [was] actually innocent." Id. at 623 (internal quotations and citations omitted). In remanding the case to permit the petitioner to make a showing of actual innocence as to the § 924(c)(1) charge, the Court noted that on remand, the government should be permitted to present any admissible evidence of the petitioner's guilt even if the evidence was not presented in the plea colloquy and would not otherwise have been offered. Id. at 24. The court also held that "[i]n cases where the Government has forgone more serious charges in the course of the plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id.

Here, Wells does not dispute the charges originally brought against him or in his plea agreement, but rather the disproportionate sentence he received when viewed under the current sentencing guidelines for his conduct. The government does not explain how Bousley applies in Wells's case or cite any cases where Bousley has been applied in the context of a compassionate release motion. The court finds that Bousley does not support the government's contention that if Wells were sentenced today the government would pursue all the charged offenses and decline to negotiate a plea agreement. Rather, it addresses the showing a petitioner must make when seeking to establish his actual innocence. Bousley's requirement for bringing a procedurally defaulted actual innocence claim is of no import here.

11

Based on the foregoing, the court finds that under the holding in McCoy, Wells has shown that he is eligible for a sentence reduction under § 3582(c)(1)(A) because he has demonstrated an extraordinary and compelling circumstance based on a sentence disparity.

C. A sentence reduction is appropriate after considering the § 3553(a) factors.

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be

incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

18 U.S.C. § 3553(a). Here, the government argues that the § 3553(a) factors counsel against granting a sentencing reduction. Resp. in Opp'n, ECF No. 80, at 13. After considering the applicable factors, the court will exercise its discretion to reduce Wells's term of imprisonment to 324 months.

Turning first to the nature and circumstances of the offense, Wells's conduct was serious. As described in the PSR, in February 2003, Wells arranged the delivery of one pound of methamphetamine to a gathering in Augusta County. ECF No. 72, ¶ 5. At the gathering, an argument ensued and Wells "brandished and discharged a firearm." Id. On March 26, 2003, police responded to a call regarding shots fired at Wells's home in Augusta. Wells was described by a neighbor as crawling on the ground, acting crazy, and claiming he was being pursued by people who wished to harm him. He had fired shots into his personal vehicle, said he had hurt individuals inside the residence, and took off in his automobile. Id., ¶ 6. Inside the home, police found "502.5 grams of methamphetamine, 22.1 grams of cocaine powder, 18.6 grams of marijuana, a safe, a loaded .30-06 rifle, scales and packaging materials, assorted ammunition, a 50 caliber muzzle loader, and materials providing evidence that Wells resided there." Id.

One month later, on April 27, 2003, Wells lied about his identity during a traffic stop on the Blue Ride Parkway—providing a false name, date of birth, and social security number. Id. His car contained four ounces of marijuana and a loaded 9mm handgun. Id., ¶

7. Two days later during a court appearance in this district, Wells again lied about his identity. Id., ¶ 8. He was released to probation. Id. Additionally, "it was determined that [Wells] routinely carried a loaded firearm while transacting drug deals and had on several occasions threatened and/or discharged the firearms to intimidate." Id. Although Wells accepted responsibility for his actions, the serious nature of his offenses, his reputation for using firearms to intimidate others in furtherance of drug transactions, and the fact that he twice gave a false name when charged with related offenses in 2003 weigh against a sentence reduction.

The history and characteristics of the defendant are a mixed bag. On the one hand, Wells represents to the court that prior to becoming addicted to methamphetamine in 2002, he was a husband and father who raised two children and maintained steady employment. Letter, ECF No. 73. He explained that after he became addicted, he needed money to supply his habit and began selling methamphetamine. In a letter Wells wrote to the court in 2005, he explained that a friend introduced him to methamphetamine and initially gave it to him for free. Wells used the methamphetamine to forget about his problems and stay awake so that he could work more hours to support his family. He soon became addicted and his friend suggested that he sell methamphetamine so that he could get his own drugs for free. As his addiction became more severe, his behavior spiraled downward and he became paranoid and started to have hallucinations. Letter, ECF No. 57.

Wells's arrest record mostly corroborates his account of the effects of his addiction. He was arrested in this case for actions that occurred beginning in 2002. PSR, ECF No. 72, ¶ 1. His criminal history report shows one charge of second degree burglary in a Kentucky

state court in 1989 when Wells was 23 years old for which he served three years. PSR, ECF No. 72, ¶ 28. He did not have another arrest until he was stopped on the Blue Ridge Parkway in 2003 with marijuana and a loaded firearm. Id., ¶ 29.

Wells's "relates a childhood in which his father was not present." Id., ¶ 32. He and his four siblings were raised by a single mother. He obtained his GED shortly after completing the eleventh grade. Id., ¶ 37. He began using marijuana at age 16 and began using methamphetamine in 2000 at age 31. Id. "[B]y July 2002, [he] was using two to three grams of methamphetamine daily until his arrest" in 2004. Id. ¶ 36. It appears that Wells's addiction was strong, as the PSR indicates that "[h]e has not benefitted from substance abuse counseling." Id. Wells acknowledges that he "made a mistake" in selling methamphetamine to maintain his use. Letter, ECF No. 73, at 1. Wells's story of addiction and the havoc it wreaks on addicts and their families is a familiar one to this court. The court finds that to the extent Wells's behavior was driven by his addiction, it weighs in favor of reducing his sentence.

On the other hand, once Wells began to sell methamphetamine, he went all in. As described above, Wells had a reputation for carrying and using firearms to threaten and intimidate others during drug transactions. He alarmed his neighbors with his erratic behavior and shot up his own vehicle after falsely claiming he had shot other people in a house. Wells also provided a false identity to a federal law enforcement officer and to this court in relation to his other 2003 charges—serious actions which he has not explained. This indicates a pattern of concerning, dangerous behavior and weighs against reducing his sentence.

While incarcerated, Wells has used his time to develop work skills that will enable him to become a productive member of society upon his release. He has worked for many years in UNICOR as a sewing machine mechanic and he currently works for General Electric Two as an electrician. His duties include fixing shorts throughout the institution and ensuring that all light fixtures are working properly. See Def.'s Mot., ECF No. 76, at 8. These skills will enable Wells to work at his niece, Shelia Leason's, construction company upon his release. See id. at 9; ECF No. 76-2, at 1; ECF No. 76-4, at 1. Additionally, Wells has completed 141 hours of educational courses while incarcerated. See Def.'s Mot., ECF No. 76-1, at 1. As Wells's family indicates, he will have a strong network of support and access to substance abuse and recovery counseling when he completes his sentence. See Def.'s Mot., ECF No. 76-2, at 1 (Shelia Leason's Letter of Support); ECF No. 76-4, at 1 (Mark Leason's Letter of Support). In addition, Wells's sister, Jamie Kilburn, and niece, Shelia Lawson, have offered to assist Wells in his recovery process. See ECF No. 76-2, at 1; ECF No. 76-3, at 1–2. On balance, the court finds that Wells's history and characteristics, including his family history, weigh slightly in favor of reducing his sentence.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, the court finds that reducing Wells's sentence to 324 months would be sufficient to accomplish these goals—especially given Congress's current view on the appropriate punishment for Wells's conduct. The fact that Wells has served nearly 18 years in prison with added credit for good behavior—and would

likely receive a 20-year mandatory minimum sentence if convicted today for the same crimes—weighs in favor of a sentence reduction.

Regarding the next two factors, since being incarcerated in the federal system, Wells has been disciplined many times, including (1) three times for drug and alcohol use; (2) two times for participating in a fight; and (3) twice for theft from the dining hall. Resp. in Opp'n, ECF 80, at 14. Three of the sanctions occurred in 2019 and 2020. Id. Although some of these infractions are minor, participation in a fight involves violence. That is concerning in light of Wells's history and offense conduct. Further, Wells justifies some of these infractions as having been a means to obtain a prison facility transfer because he did not want to be housed with convicted child sex offenders. Def.'s Mot., ECF No. 76, at 8 n.3. This explanation indicates that Wells committed the violations intentionally and also indicates that Wells is willing to go to extremes, including breaking prison rules, to obtain an outcome he desires. The court finds these infractions and their explanation deeply troubling. Although, as Wells points out, at the age of 54 he poses a "low risk of recidivism," this does not outweigh the court's concerns regarding his disciplinary record. Id., at 11. Thus, the court finds that Wells's age and disciplinary record weigh against a sentence reduction.

Given Wells's educational and employment record while in prison coupled with the fact that Wells obtained his GED long before his incarceration, the court does not see how maintaining his multi-decade sentence would provide significantly more needed educational or vocational training. However, as recommended by the court during Wells's sentencing but not yet made available to him, Wells would benefit from enrollment in an intensive drug treatment program. See Letter from the BOP, ECF No. 60, at 1 (indicating that Wells would

17

be "referred for a transfer to an institution that offers [a drug abuse treatment] program when he is nearer to his projected release date"). This factor weighs in favor of reducing Wells's sentence.

Looking at the kinds of sentences available and the applicable guidelines range of 120–21 months for a person with an offense of level 29 and criminal history category of II, Wells would face a drastically shorter sentence today for the same charges. First, Wells would face a mandatory minimum of 5 years for each stacked § 924(c) charge for a total of 10 years. Second, Wells would likely receive a mandatory minimum sentence of 10 years for the drug offenses. Thus, if sentenced today, his sentence likely would be 20 years. This stands in stark contrast to his actual sentence of 40 years and weighs heavily in favor of reducing Wells's sentence.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Wells's case. The court finds that Wells's current sentence is greater than necessary to achieve the statutory sentencing objectives and that a lesser sentence would adequately reflect the magnitude and duration of Wells's criminal conduct. Given the circumstances of this case, including Wells's history and characteristics, both positive and negative, the court concludes that a sentence reduction to 324 months is warranted.

## CONCLUSION

For the reasons stated herein, the court will **GRANT in part** Wells's motion for compassionate release, ECF No. 76. The court finds that a sentence reduction to 324 months is appropriate given the circumstances of this case. The clerk is directed to send a

copy of this memorandum opinion and the accompanying order to Wells, his counsel of record, and the United States.

An appropriate order will be issued.

It is so **ORDERED**.

Entered: April 12, 2022

Michael F. Urbanski
Chief United States District Judge